## SELLS et al., Appellants, v. TOOTLE et al.

### Division One, March 12, 1901.

1. **Consolidation of Claims: PRACTICE.** It is not good practice, after one plaintiff has stated his cause of action, to permit other claimants to come into the case, and consolidate their claims against a common defendant.

2. **Note: PURCHASE AFTER MATURITY.** The purchaser of a note after maturity takes it subject to all defenses and equities to which it was subject in the hands of the original payee.

3. **Mortgages: PURCHASE BY QUITCLAIM: RECITALS: NOTICE.** The purchasers by quitclaim deed, and purchasers who take under a deed which recites that the property is free from all incumbrances except such as the county records show, stand in the same position, in reference to the title, as the original mortgagor.

4. ———: ———: ———: **ASSIGNEE OF MATURED NOTE.** In an injunction suit, brought by one who claims title through a quitclaim deed and a subsequent warranty deed which recites that the grantee takes subject to such incumbrances as the county records show to exist, to enjoin foreclosure of a then recorded deed of trust, by one who has bought, after its maturity, the note secured thereby, which suit is based on the ground that the original mortgagee had made an unrecorded release deed of the deed of trust, the contest is to be determined in the same way as if it were one between the original mortgagor and the original payee of the note.

5. ———: **RELEASE: WITHOUT CONSIDERATION.** In such case the unrecorded deed, if without consideration, is, as to the original mortgagor and such subsequent purchasers, and as to the mortgagee and those who stand in his shoes, no release at all.

6. ———: ———: **PAYMENT: PRIMA FACIE CASE.** The acknowledgment of payment of the mortgage debt, in the release deed, is only prima facie evidence that the debt was paid, and is entirely overcome by proof that it is not paid. And if it is shown that there was not in fact a satisfaction of the debt, and no consideration for the release deed, purporting to extinguish the mortgage and note, it is, as to all the persons except innocent purchasers, of no binding force and effect.

Vol 160 mo—38

7. ———: ———: INNOCENT PURCHASERS. One who, before a pretended release of a deed of trust was made, takes mortgage bonds on property as additional security for money already loaned to the mortgagor, can not claim that he took such bonds on the faith of such release.

8. Evidence: BANKER. A banker who refreshes his memory by disclosing so much of his bank books and notes as are favorable to his customer, but refuses to permit the court or attorneys on the opposite side to inspect those books and accounts, can not complain if the court refuses to give his testimony full weight and credit.

9. ———: EXECUTRIX: MATTERS PERTAINING TO HUSBAND'S ESTATE. The executrix is a competent witness concerning transactions, had by her after she had qualified as such, with the grantor in a mortgage given by him, in her husband's lifetime, to secure a note held by her husband as mortgagee.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson,* Judge.

AFFIRMED.

*Stauber & Crandall* and *F. F. Harl* for appellants.

(1)   It was error in the trial court, under the pleadings, to permit any evidence (if there was any) tending to show that the release was conditional, as the answer denied the existence of any release. Wright v. Fonda & Higgins, 44 Mo. App. 634; Bank v. Murdock, 62 Mo. 70; Glass v. Gelvin, 80 Mo. 297; Fulkerson v. Thornton, 68 Mo. 468; Nugent v. Curran, 77 Mo. 323; Paddock v. Lance, 94 Mo. 283; Huston v. Tyler, 140 Mo. 252; Bank v. Armstrong, 62 Mo. 65; Weil v. Posten, 77 Mo. 284.   (2)   The note being an over-due obligation, Tootle took it subject to all defenses and equities. Henley v. Holzer, 19 Mo. App. 245; Murphy v. Simpson, 42 Mo. App. 654. In the language of the Supreme Court of Kansas, the "holder of a note and mortgage may release the mortgage without receiving anything thereon, or

therefor." "He may consider the makers good and be willing
to release the mortgage without receiving any payment on
the note." Cited in 91 Mo. 352; Lewis v. Kirk, 28 Kan.
500; Hagerman v. Sutton, 91 Mo. 532. (3) After this
deed of release was executed and delivered to Mr. Crawford
as president of the opera house company, and it was shown
to the Bank of Topeka that this property was free from this
lien, the bank consented to, and did, act as trustee and take
the bonds of the company before maturity to secure the money
due and to be advanced, and the plaintiff Lewis Sells bought
the property from the company for a consideration of thirty-
five thousand dollars. Under this state of facts neither Allen
Sells nor Tootle will be permitted to say that it was not leased.
Lumber Co. v. Kreeger, 52 Mo. App. 418; Bank v. Frame,
112 Mo. 502. If Allen Sells had been alive, his wife, Mrs.
Greenspan, would not have been a competent witness, and
there is nothing shown which removes the objection, and it
was error to allow her to testify—and her present husband
was permitted to swear in this case by saying he was the agent
for Mrs. Greenspan Sells. There is nothing in the statute
referred to making Mrs. Greenspan competent. R. S. 1889,
sec. 8918.

*A. Bergen* and *R. A. Brown* for respondents.

(1) The plaintiffs simply alleged that the deed of trust
had been released, without in any way stating the method by
which the release had been effected. The defendants' an-
swer denied that the deed of trust had been released. This
answer was sufficient—it was as good as the petition, and per-
mitted the defendants to show in any proper way that the deed
had not been released. The plaintiffs having failed by their
petition to apprise defendants in what manner they claimed
the deed of trust to have been released, defendants were not

required in their answer to deny the execution of any particular character of release. They denied that the deed of trust had been released in any manner, and the court found the facts in accordance with defendants' answer. (2) Of course Mr. Tootle took the note secured by the deed of trust subject to all defenses and equities, if any really existed. There were no equities and the court so found. (3) The language quoted from the Kansas Court was used in a case very different from this. In the Kansas case the release had been given with the intent to satisfy the mortgage, and had been recorded, whereby a subsequent bona fide purchaser or incumbrancer was protected. (4) The receipt or so-called release was never delivered or recorded as a release, and never operated as such. No money or other thing of value was advanced on the faith thereof. Lewis Sells never heard of it. He did not testify and paid no attention to this suit in any manner. Since the execution of the deed to him the property continues as before, to be treated as Crawford's property. The sale or transfer was doubtless a sham. (5) Mr. and Mrs. Greenspan were competent witnesses for the purposes for which they were introduced. No evidence was given by either of them "except as to such acts and contracts as have been done or made since the probate of the will or the appointment of the administrator." Mrs. Greenspan was appointed executrix of the will of her former husband, Allen Sells, on the thirty-first day of March, 1894, and only testified as to acts and circumstances subsequent to that time. For this purpose she was a competent witness. R. S. 1889, sec. 1918; Wade v. Hardy, 75 Mo. 400; Leeper v. Taylor, 111 Mo. 313. Mr. Greenspan was a competent witness as to transactions conducted by him as the agent for his wife. R. S. 1889, sec. 8922; Stanton v. Ryan, 41 Mo. 510; Leete v. State Bank, 115 Mo. 184. (6) A trust deed may be satisfied either

by entry on the margin of the record, or by deed of release. R. S. 1889, sec. 7094. In this case there was no entry on the margin of the record, nor deed of release. The receipt or so-called release in this case was not sealed. R. S. 1889, sec. 2401. It is essential to a deed that there be a grantor and a grantee. Douthett v. Stinson, 63 Mo. 277. (7) Even if the receipt or so-called release produced by the plaintiffs should be regarded as sufficient in form to constitute a deed of release within the meaning of the statute, yet if it was not delivered with the intention that it should release the deed of trust at that time, it did not so operate. Tiedeman on Real Property, sec. 812; 5 Am. and Eng. Ency. of Law, p. 447. The receipt, satisfaction, or so-called release executed by Allen Sells, is only prima facie evidence, and is subject to be explained or contradicted. Chappel v. Allen, 38 Mo. 223; Joerdens v. Schrimpf, 77 Mo. 383; Valles v. Am. Iron Mountain Co., 27 Mo. 455; Seiberling v. Tipton, 113 Mo. 379; Christie v. Scott, 31 Mo. App. 337; Dudley v. Bergen, 23 N. J. Eq. 400; Barnes v. Camack, 1 Barb. 392; Richardson v. Hockenhull, 85 Ill. 124; Bruce v. Bonney, 12 Gray, 107.

VALLIANT, J.—This is a suit in equity to enjoin the foreclosure of a deed of trust on the ground that it has been released. The validity of the alleged release is the sole question in the case.

The averments of the petition are to the effect that plaintiffs, Lester M. Crawford and Mary Crawford, who are husband and wife, on October 2, 1890, were the owners in fee of certain real estate in St. Joseph, and on that day executed their note for $2,500, payable to the order of one Allen Sells, three years after date, and a deed of trust to defendant Fife to secure it, with the usual powers of sale, etc., which was duly recorded; that afterwards Crawford and wife sold the

real estate to the Missouri, Kansas & Nebraska Opera House and Amusement Company, a corporation; and that company sold it to the plaintiff Louis Sells, who now owns it; that on January 14, 1896, the defendant Tootle became the owner and holder of the note and as such had caused the property to be advertised for sale by the trustee, under the terms of the deed, for foreclosure and satisfaction of the debt; that the note had been paid except the sum of ——— dollars, which plaintiff tendered to Tootle January 27, 1896, with expenses, etc., which tender was refused; "that the said deed of trust was, for value received, on the ——— day of December, 1892, duly released by the said Allen Sells, who was the payee in, and at that time the owner and holder of, said note and deed, and that said property from that day and now is not subject to said deed of trust;" that if the sale is suffered to occur, irreparable injury will be occasioned, etc. The prayer is for injunction and removal of the cloud from plaintiff's title. The answer joins issue on the material averment. A temporary injunction was granted on filing the bill. Before the cause came to trial the Bank of Topeka was allowed to come in as a plaintiff, and filed its separate petition, in which it averred in substance that after the sale by Crawford and wife to the opera house company, that concern desired to execute a deed of trust to secure bonds to be issued by it, and applied to the bank to take some of the bonds to secure it for advances made and to be made and to act as trustee in the deed of trust; that before the bank would agree to do so it required of Crawford, who was a director, the president and manager of the corporation, that he should obtain a release of this Sells deed of trust, which Crawford did on December 15, 1892, and upon the faith of that, the bank advanced the opera house company $25,000, and agreed to act as trustee in the deed which was proposed to be and which was accordingly

executed, and the bonds delivered to the bank; that Tootle acquired the Sells note after it was due and took it subject to equities, but that he was proceeding to have the land sold under the deed of trust, etc., and prayed for an injunction, etc.

Upon the trial the plaintiffs introduced a quitclaim deed to the property from Crawford and wife to the opera house company, dated September 1, 1891, for $45,000 cash, subject to an incumbrance of $12,000, recorded May 16, 1892; then a warranty deed from the opera house company to Louis Sells, dated January 6, 1896, for the same property, for $35,000 cash, "free and clear from any incumbrances, except as is shown by the records of Buchanan county;" then the deed of trust referred to in the bank's petition from the opera house company to the Bank of Topeka to secure bonds to the amount of $100,000, dated May 1, 1893, and duly recorded. Then the plaintiffs introduced the alleged release which is in these words: "Know all men by these presents, that in consideration of full payment of the debt secured by a mortgage made by Lester M. Crawford and Mary E. Crawford to Allen Sells, dated second day of October, A. D. 1890, which is recorded in book 190 of mortgages, page 214, of the records of Buchanan county, Missouri, satisfaction of said mortgage is hereby acknowledged and the same is hereby released. Dated this December 15, A. D. 1892. Allen Sells." It was acknowledged before a notary public in Kansas. This document was never recorded. Plaintiffs then called Mr. Imel who testified that he was legal counsellor for the opera house company during the period covering the events in dispute, that in that capacity the above release was sent to him and he decided that it was not sufficient for the purpose designed, that is, clearing the way for the $100,000 mortgage, and prepared a quitclaim deed to be executed by Sells and wife to the

Sells v. Tootle.

property, and mailed it to Mr. Crawford in Kansas, but that document he had never seen since, and knew nothing of its fate.

Clarence Huff was the general clerk and business·man for Mr. Crawford, was familiar with his correspondence and all his affairs; he was also a notary public, and as such took the acknowledgment to the release. He was a witness for plaintiff, and testified that Crawford requested him to go to see Sells and ask him to give a release of the St. Joseph mortgage which he held; that witness went accordingly and obtained this release. Witness knew Sells's signature, and thinks he saw him write his name to this paper; is positive he acknowledged it to be his signature. Witness did not recollect that he asked him the formal question as to acknowledgment—"You know frequently when we are well acquainted that we do not go through the formality like you do when it is a stranger." Witness stated that he received the quitclaim deed that Mr. Imel had testified about, and at the request of Mr. Crawford went to see Mr. Sells to get it executed; that he did see both Mr. and Mrs. Sells, and they both signed it in his presence. Plaintiffs at this stage of the evidence of this witness stated that for the purpose of laying the foundation for further questions as to the contents of that quitclaim deed, they would show that it had been lost, and therefore never filed for record. Upon this assurance the witness was permitted to proceed to state that it was a quitclaim deed releasing the deed of trust in question. On cross-examination he said that he paid Mr. Sells nothing upon the occasion of the execution of either the release read in evidence or the quitclaim deed, and so far as he knew no one paid him anything.

Mr. Mulvane, president of the Bank of Topeka, a witness for plaintiff, testified that when the subject of the mak-

ing of the $100,000 deed of trust by the opera house company was presented to him by Mr. Crawford, the latter owed the bank $20,000, and when that deed was executed the bonds were deposited in the bank and they held them as security for the debt Crawford owed; that during the negotiations, Crawford had shown him some release of a prior incumbrance, just what it was, he did not remember.  Subsequently (the taking of his deposition lasted more than one day) he was shown the release in question and he said it was the release Mr. Crawford had shown him.  He first said that Crawford's debt to the bank was incurred before the bonds were delivered, but after a recess in the taking of his deposition he returned and said that some of the loan was after the bonds had been delivered, that he had not carried the facts in his memory, and had in the recess referred to the books of the bank and there found that part of the loan had been made to Crawford afterwards, and he then stated that the after-loan was on the faith of the bonds and the release he had seen.  He was asked on cross-examination if he would furnish a copy of Mr. Crawford's account with the bank, covering that period and he said, no; and if he would allow defendant's attorney to see the account on the books of the bank, and he said, no, that the bank had no right to show Mr. Crawford's account to anyone. Further cross-questioned as to the alleged advances to Crawford after the bonds were taken by the bank, witness said $5,000 or $6,000 of it was to take up a prior incumbrance on the St. Joseph property which was originally a note of $8,000, and the witness had that note then and there.  When asked if he would allow defendant's attorney to see it he first said, "Yes, I have no objection," but on second thought said, "I believe I won't do it."

Plaintiffs next produced the written agreement under which defendant Tootle acquired the $2,500 note, which was

in substance a guarantee of the seller, Mrs. Greenspan, that the note and deed of trust described were valid and unsatisfied, except such payments as are indorsed on the note; and that if at a sale to be made under the deed of trust, Tootle should bid enough to satisfy a former incumbrance for $8,000 and interest and as much as $1,100 in addition, and should become the purchaser, it was further guaranteed that if the deed of trust should in any way turn out to be invalid and he should lose the $1,100, which was the sum he was to pay for the note, he was to be indemnified for the loss, together with costs of foreclosure, etc., but that the solvency of Crawford was not guaranteed nor the title to the lots nor incumbrances, tax sales, etc.

The $2,500 note was then shown in evidence containing several payments indorsed on it, which reduced it to $1,500 at June 16, 1895. That was the plaintiff's case.

Defendants' evidence was to the effect that Tootle bought the note without any notice of the alleged release, that after he had bought it, and after foreclosure proceedings had begun, Crawford came to him and offered to pay between two and three hundred dollars; after that Crawford told him that the deed of trust had been released. The note had been kept by Sells in his lifetime in a bank in Kansas, and Crawford and Sells went to the bank together, in February, 1893, and at other times thereafter, and the cashier figured the amount due after the payments were indorsed. During these occasions nothing was said about a release of the mortgage. Sells died in March, 1894.

In 1895 the note was in the hands of an attorney in St. Joseph who urged Mr. Crawford to pay it, and Crawford said he would do so as soon as he could but was then not able. The attorney called his attention to tax-sales of the property, and he said that he would attend to that; the amount spoken

of between them as then due on the note was $1,500; in those discussions Crawford said nothing about a release; after the property had been advertised for sale under the deed of trust, Crawford tendered to the attorney $363.81, but said nothing about a release. Mrs. Greenspan, who was the widow of Allen Sells and the executrix of his will, was offered as a witness for defendants. Plaintiffs objected that she was incompetent, but when counsel for defendants stated that she would be asked only concerning matters that occurred after her appointment as executrix, the court ruled that she was competent to that extent, and plaintiffs excepted. She testified that in 1895, while she held the note, she spoke to Mr. Crawford about it, told him she was building and needed money and offered to let him have the note for $1,000, and he said, "I could not do it at the present time, I haven't the money," but, he says, "I will pay you the interest on the mortgage and pay you off as soon as I can." She learned through Mr. Bonebrake that the taxes on the property had been paid by a brother of Mrs. Crawford's, and witness spoke to Crawford about it, and "he told me he had the taxes fixed so as nobody could get it." Witness testified that Crawford had paid her interest several times, and that once he had tendered her $250 or $350; that was after she had sold the note to Tootle and the foreclosure had begun. He never said anything about a release. Witness knew Clarence Huff. Upon two occasions he asked witness after she was executrix, to allow him to look through Mr. Sells's papers, saying that he had lost a paper, that was in connection with the opera house company, and that Mr. Crawford wanted to use it, but witness refused to allow him to go through the papers. Defendants produced a paper that Mr. Imel, when recalled for the purpose by defendants, recognized and identified as the quitclaim deed he had prepared and mailed to Mr. Crawford to be executed by Mr.

Sells and wife; it was just as it was when Mr. Imel mailed it, there was no signature and no execution of any kind.

The court found the issues for defendants and rendered a decree in their favor, dissolving the injunction and dismissing the plaintiffs' bill, from which decree they appeal.

I.    The intrusion of the Bank of Topeka into this case was unwarranted.    If the original plaintiffs were not entitled in their own right, and on the case stated in their petition, to maintain the suit, it could not be maintained on the ground that some one else on a different case stated, could maintain it.    The case must stand or fall on the facts stated in the plaintiffs' petition.    And upon reading the petition it may also be asked, what interest have the Crawfords in the suit? They sold the property by quitclaim to the corporation and the corporation to Louis Sells, who according to the petition is the sole owner of it.    The validity of the note, which is the only thing in which they are interested, is not in question, and that there is a balance due on it is not disputed.    Yet Louis Sells takes no interest in the case and Mr. Crawford is the leading actor in the suit.    This fact perhaps gives rise to defendants' conjecture that, in spite of the apparent conveyances, Crawford is still the owner of the property.    It is not necessary, however, for us to go into that subject.    The court allowed Louis Sells, the Crawfords and the bank to consolidate their several claims and make a united attack on the defendants' claim, and as the case was tried in that way we will consider it in the same way, but it is not a kind of pleading or practice that we approve.

II.    That Tootle, having bought the note after its maturity, took it subject to all defenses and equities to which it was subject in the hands of the original payee, is an unquestioned proposition of law, and is conceded by defendants.    It is equally true that the corporation having taken under a quit-

claim deed, and Louis Sells having taken under a deed from the corporation expressly subject to whatever incumbrances the records of Buchanan county showed (among which was the deed of trust in question), Louis Sells stands only in the shoes of Crawford. That view of the attitude of the parties simplifies this controversy very much. It leaves it exactly as if it had arisen in the lifetime of Allen Sells, between him and the Crawfords, before the latter had made any transfer of the property. Could the Crawfords, while still owning the land, have enforced this alleged release against Allen Sells? In the first place the proof of the alleged execution of the release was far from satisfactory. It depended on the testimony of one witness and that a zealous one. According to that witness, he called on Mr. Sells, asked him to sign it and he did so and that was the whole transaction. Witness was positive he either saw Sells sign it or acknowledge it to be his signature. But the same witness was just as positive that he saw Mr. and Mrs. Sells sign the quitclaim deed that Mr. Imel had prepared, and was even more elaborate in giving the details of the execution of the latter than of the former instrument. Yet that very paper was produced in court at the trial, unsigned and no indication of any attempt at execution on it. That he was so entirely mistaken as to one, justifies the apprehension that he might have been mistaken as to the other also. But conceding that the paper was signed by Allen Sells, could the Crawfords have enforced it against him? They paid him nothing for it; their own witness is witness for that. But it is said that the Supreme Court of Kansas has said that the "holders of a note and mortgage may release the mortgage without receiving anything thereon." That was said in defense of the right of an innocent third party who had bought the mortgaged property on the faith of the release by the mortgagee on the face of the record. [Lewis v.

Kirk, 28 Kan. 497.] A mortgage may be released and the note held, but that is not what this transaction on the face of the paper purports to be. It does not purport to be a release merely, but a satisfaction also, of the mortgage and not only that, but it expresses that it is given "in consideration of full payment of the debt secured by" the mortgage. Its purport is to extinguish the note as well as the mortgage and to extinguish the mortgage by extinguishing the note. But the plaintiffs themselves own that the note was not paid. The acknowledgment of payment in the alleged release was only prima facie evidence, and is entirely overcome. [Joerdens v. Schrimpf, 77 Mo. 383; Seiberling v. Tipton, 113 Mo. 373.] As between Crawford and Allen Sells, there was no release and as between Lewis Sells who stands in Crawford's shoes and Tootle who stands in Allen Sells's shoes, there is no release.

III. Is the Bank of Topeka in any better position than Lewis Sells? The bank was evidently brought in to rescue this case. According to its own statement, it has agreed to lend its name as trustee to a transaction whereby the bonds of a $100,000 mortgage put upon this property are to be offered in the market, and now holds those bonds, first, as security for its own debt of $20,000 against Crawford, and afterwards presumably for sale as trustee or financial agent. A financial institution of the high character of the Bank of Topeka would not have lent its name and influence to a transaction of that kind if there had not been a larger margin between the $20,-000 of its own debt and the $100,000 mortgage bonds to be floated, than the small balance due on this deed of trust. Therefore, if all that the bank says in its petition is true, there is little ground for apprehension on account of its own debt, and as to purchasers of the balance of the bonds, there are none yet; the bank has that matter in its own hands. But we do

not believe from the evidence that the bank advanced any-
thing on the faith of that release.    We do not doubt that Mr.
Mulvane the president told the truth, but we are not bound
to draw the same conclusion that he does from the facts.    The
transactions between Mr. Crawford and the bank were had
with Mr. Mulvane, therefore if there was any faith given to
any incident in the business it was given by Mr. Mulvane in
person; it was the act of his individual mind, and did not
enter into the records of the bank.    Yet when he was testify-
ing from his own consciousness he said that all the advances to
Crawford were before the negotiations about the $100,000
mortgage came up.    Of course then, as he viewed the case
from his own memory, there was no credit given on the faith
of any release.    But during the recess he examined the
books of the bank and when he resumed the stand he said that
he had discovered that part of the debt to Crawford was cre-
ated after the bonds were delivered to the bank, and then he
stated (which was evidently his legal  deduction from that
fact) that the bank relied on that release in giving the further
credit.    That testimony is not strong enough to create an es-
toppel.

As president of the bank he is not to be blamed for guard-
ing his customer's private account from unfriendly exami-
nation, but when he comes into court in the capacity of a
witness and discloses so much of the account as he thinks is
favorable to his customer, and declines to disclose the balance,
he must not expect the court to give his evidence that full
weight that it would give if the conditions had been such as
that he would have felt justified in putting the court in pos-
session of the whole case.

There was no error in admitting the testimony of Mrs.
Greenspan and her husband concerning transactions with Mr.
Crawford after Mrs. Greenspan had qualified as executrix.

The judgment of the circuit court was for the right
party, and is affirmed.    All concur, except *Marshall, J.,* absent.