## JOHN K. ARTZ, Appellant, v. METROPOLITAN LIFE INSURANCE COMPANY, Respondent.

### St. Louis Court of Appeals, December 3, 1901.

Contract: CONSTRUCTION OF: EVIDENCE. In the case at bar, there being no intention to charge for the expenditures as stated in plaintiff's petition, no implied contract was made out binding on respondent to pay the account for appellant and under all the evidence the expenditures of appellant were incident to the carrying on of the business of his agency, and are embraced in the third clause of his contract which is made as follows: "Third. To pay all the usual and necessary expenses of every kind incident to the carrying on of the business of my agency staff......"

Appeal from St. Louis City Circuit Court.—*Hon. John A. Talty*, Judge.

AFFIRMED.

## STATEMENT OF THE CASE.

The suit is to recover on an itemized account of eleven hundred and forty dollars for rent of office rooms, janitor service, fuel and light, from February 1, 1895, to February 1, 1900, which the appellant alleges he, as assistant superintendent of respondent's branch office in the city of St. Louis, paid out and expended at the instance and request of the respondent. The answer admitted the incorporation of respondent and its business, and denied all other allegations of the petition. The appellant had yearly contracts of employment with the respondent for the years 1895 to 1900, inclusive, all of which were of the same tenure and effect as the one read in evidence. The portions of the contract material to this controversy are as follows:

"In consideration of being appointed assistant superintendent in the industrial department of the Metropolitan Life Insurance Company, hereinafter called 'the company,' I hereby agree: ·

"First. To name to the company for appointment suitable agents for the industrial department of the company's business, to instruct them in the details of the work, and to perform any and all other duties in the way of inspecting, canvassing and collecting, or otherwise, as directed by the home office, or the superintendent of my district, and to use my utmost endeavors to promote the success of the company's business.

"Second. To see that all agents under my charge send to the home office each week, on the day required, and on

the forms provided by the company, true accounts of all moneys received by them, and remit for the same as provided by their agreements.

"Third. To pay all the usual and necessary expenses of every kind incident to the carrying on of the business of my agency staff, and to hold all books, circulars, signs and supplies of every description furnished by the company, as its property, the same to be at the absolute disposal of the company, or its authorized representative at all times.

"Fifth. To obey all the rules of the company contained in the manual or instruction book, as the same now are and may hereafter be, and all other rules of the company, however they may be published or communicated.

"Seventh. I agree to accept during the time of my first year's services as assistant superintendent a stated salary of $22.09 per week in full compensation for my services, and thereafter, during each succeeding year of the existence of this contract, an addition to such stated salary equivalent to such proportion of the net increase in the weekly debit of my agency staff as shall be represented by the ratio the total premiums collected and accounted for by the company shall bear to the total debit for the year. I further agree to accept a calculation to be made by the home office of the company of any addition to my stated salary herein referred to.

"Eighth. If at any time I resign, or am dismissed from the assistant superintendency during any year, the compensation above provided, which I have been authorized to receive to that date shall be in full settlement of all claims upon the company, and all further compensation which a successful continuance of the assistant superintendency might have secured to me shall be waived or forfeited by my dismissal or resignation."

The manual book referred to in the contract contained the following:

"4.   Expenditures Must be Authorized.—Expenditures on behalf of the company must never be made or authorized by you except with the written consent of an officer.   Bills must be made out in detail and itemized and approved in writing by the superintendent.   When writing the company for authority to purchase furniture or make alterations or repairs or otherwise, ascertain and state estimated cost of same."

Appellant admitted he had knowledge of this provision in the manual book and that he was governed by it.

Appellant put in evidence the following letter of respondent dated August 18, 1898:

"To Superintendents and Detached Assistant Superintendents:

"Gentlemen—Hereafter wherever it has been the custom of the company to pay the rent of branch offices, or where paid by the superintendent or assistant and he has subsequently been reimbursed by the home office, the following plan of payment will be adopted; just before the date when the rent is due, whether payable in advance or at the end of the term, an unreceipted bill or form of notice indicating the name of the person to receive the rent, is to be sent to the home office.   Check for the amount due to the order of the proper person will be promptly forwarded, which is to be immediately delivered, and no receipt taken therefor.  Where the company occupies any part of the assistant's home as its office and has been in the habit of paying rent therefor, the rent will hereafter be remitted at the end of the month for which rent will be due and never in advance.

"Yours truly,

"Geo. B. Woodward, Secretary."

The oral evidence offered by appellant tended to prove the following facts:   That prior to February 1, 1895, appellant had been sent to Burlington, Iowa, by respondent, to open

a branch office there; that he remained there about six months
and then returned to St. Louis; "that upon his arrival appel-
lant was instructed by Mr. Higginbotham, respondent's dis-
trict superintendent, to locate a branch office either in south
St. Louis or Cheltenham, and that he decided to establish a
branch office in south St. Louis; that, Mr. Higginbotham, re-
spondent's district superintendent, went around with appel-
lant in search for a branch office, and finally located one at
No. 3743 South Jefferson avenue, in the city of St. Louis,
which was a house arranged for two families; that appellant
rented, at the suggestion of the respondent's district superin-
tendent, the second story of said house, the same containing
four rooms, and that one room was set aside for the use of
an office for respondent; that respondent sent the office furni-
ture and the necessary stationery to the office, together with
a sign inscribed, 'Metropolitan Life Insurance Company;' that
this office was used exclusively for respondent company from
the first of February, 1895, to the first day of November,
1896, and that during all that time appellant furnished the
necessary fuel, light and the services to clean said office, and
that five or six agents of the respondent reported there daily
to him; that after the first of November, 1896, this office was
removed, with the consent of the district superintendent, to
appellant's own house, No. 3015 Neosho street, in the city of
St. Louis, where appellant arranged at considerable expense,
an office for the exclusive use of respondent, and which office
was retained by respondent until the first day of February,
1900, whereupon its several branch offices in the resident
districts were consolidated and put in one building in south
St. Louis; that appellant also furnished coal, fuel and the
services for cleaning the office while said office was located in
his house on Neosho street.   Evidence was given of the rea-
sonable rental value of said office, of the reasonable value
for the services in cleaning said office, the fuel and light re-

quired for same. It was proven that the respondent recognized said branch office by having large signs put up with the inscription, 'Branch office of the Metropolitan Life Insurance Company, of New York,' by advertising the said office and appellant's name as assistant superintendent in charge thereof, in respondent's yearly calendars, its pamphlets, statements and books issued by it in the German, French and English languages, and distributed all over the United States. It was also proven that it was the custom of respondent to pay rent for such offices, and that it was the intention of appellant to charge rent and compensation for the keeping clean, furnishing the fuel and light for said office. It was also proven that appellant, after the office had been removed from his house, received the same salary as he had received while the branch office was located at his house."

It was conceded by appellant that no demand was made by him for rent, janitor service, etc., until shortly before the suit was commenced, and that no agreement had been made as to the amount he should receive for furnishing office, janitor service, fuel and light.

At the close of appellant's evidence the court instructed the jury to return a verdict for respondent which was done. In due time appellant filed his motion for a new trial which the court overruled and he appealed.

*A. Gfeller* for appellant.

(1) The intent of an instrument is the controlling factor in its proper interpretation, and to ascertain it all of its parts should be considered. Conrad v. De Montcomb, 138 Mo. 324; Calloway v. Henderson, 130 Mo. 77; Carney v. Chillicothe W. & L. Co., 76 Mo. App. 532; County of Johnson v. Wood, 84 Mo. 489. (2) The contract between appellant and respondent is a onesided or unilateral one. It is ambig-

uous, and parol evidence is admissible to show that respondent paid rent for similar branch offices, and what the usual and necessary expenses mentioned in article 3 of the contract were. Schuetze v. Bailey, 40 Mo. 69; Brink v. Hollah, 3 Mo. App. 593; Strauss v. Kingman, 42 Mo. App. 208. (3) It is elementary law that if one employs another to do business for him, or perform any work, or furnish anything of value, in pursuance thereof, the law implies a promise on part of the beneficiary to pay the reasonable value thereof, and proof of the performance of the services or furnishing of things of value by one of the parties, and the acceptance thereof by the other, makes a prima facie case. Sprague v. Sea, 152 Mo. 327; Dougherty v. Whitehead, 31 Mo. 255; Smith v. Meyers, 19 Mo. 434. (4) Whether or not a benefit is rendered for pay or as a gratuity, is a question of fact to be left to the jury. Kerr v. Cusenbary, 60 Mo. App. 558; McQueen v. Wilson, 51 Mo. App. 138; Smith v. Meyers, 19 Mo. 434. (5) If there is any evidence tending to support an action or defense, it should go to the jury. Hadley v. Orchard, 77 Mo. App. 141, and cases cited.

*Nathan Frank* and *Richard A. Jones* for respondent.

(1) Where parties are under contract as to a certain subject-matter, a service rendered in connection with such subject-matter is presumed to have been so rendered as a part of the consideration of such contract, unless the contrary plainly appears; and the mere rendition of such service by the one and its acceptance by the other, in the absence of further evidence, does not raise an implied promise on the part of the one who received it to pay anything outside of the consideration provided in such contract. (2) Plaintiff, during the time the items charged upon in his petition are alleged to

have been furnished, was in the employ of defendant as an assistant superintendent, having in charge a certain district. The terms of such employment were evidenced by written contract, which contract contains the following condition to be performed by him: "To pay all the usual and necessary expenses of every kind incident to the carrying on of the business of my district, unless by special agreement otherwise." The terms of such agreement rebut any presumption of an implied promise on the part of the defendant to pay for. anything furnished by defendant to forward the business of defendant in such district. And in the absence of an express agreement to pay, of which there is no evidence, the presumption of law is that the items so alleged to have been furnished by plaintiff were furnished under the terms of such agreement and as a part of the consideration therefor. Bishop on Contracts (Ed. 1887), par. 22, and cases there cited.

BLAND, P. J.—Under the third clause of his contract appellant agreed to pay all the usual and necessary expenses of every kind incident to his agency. It seems from the evidence that the duties he was required to perform made it necessary that he should have an office room. The rent charge, therefore, was an incident to the carrying on of the business of his agency. This he agreed to pay and was bound to pay, unless the evidence is such as to warrant the inference that office rent was not one of the expenses usually borne by an agent of his grade and was not in the minds of either of the parties to the contract when it was entered into. The oral testimony has a tendency to prove that the offices were rented at the direction of Higginbotham, an agent of respondent of higher rank than appellant, and that after being rented they were recognized and advertised as the offices of respondent. But for the manual book of respondent, by which appellant admits he was bound, the inference might be reasonably

drawn that appellant rented the rooms at the instance and request of the respondent and with the implied promise on the part of respondent to pay the rent. The manual prohibits the incurring of any expense to respondent by appellant unless he was authorized by the written consent of an officer of the company. No authority in writing was given appellant by any officer of the company to rent rooms. Appellant knew the provisions of the manual and admitted that he was bound by it. We must conclude, therefore that he had no authority to rent the rooms at the expense of respondent nor reason to look to the respondent to reimburse him for the rent. His subsequent conduct also negatives the inference that he intended to charge the rent and other items of expenditure in his account to the respondent or expected reimbursement from the company.

There being no intention to charge for these expenditures, no implied contract was made out binding on respondent to pay the account for the appellant (Kinner v. Tschirpe, 54 Mo. App. 575), and we conclude under all the evidence the expenditures of appellant were incident to the carrying on of the business of his agency and are embraced in the third clause of his contract.

What appellant expected to prove by the excluded evidence is not preserved in the record and it is therefore impossible for us to determine whether it was material or not. From the questions propounded the inference is that had the questions been answered the answers would not have been relevant testimony. State v. Martin, 124 Mo. 514.

Discovering no reversible error in the record the judgment is affirmed. Judges *Barclay* and *Goode* concur.