WONDERLY, Respondent, v. GIESSLER, Appellant.

St. Louis Court of Appeals, April 24, 1906.

1. MORTGAGOR AND MORTGAGEE: Principal and Surety: Assuming Mortgage. Where the grantee of real estate assumes the payment of a mortgage on the land, made by the grantor, he becomes as to the debt secured by the mortgage the principal debtor and the grantor becomes his surety and an extension of time of payment granted the principal by the holder of the note without the consent of such surety releases the surety.

2. MERGER: Mortgagor and Mortgagee. Where the ownership of an equity of redemption and of a mortgage become vested in the same person without any intervening lien, between the mortgage and the equity, and without any express agreement that the mortgage should be kept alive, the two estates will merge and the mortgage become extinct.

3. ———: ———: Purchase of Mortgage by Holder of Equity. Where one purchased and received a conveyance for a tract of land "subject to a deed of trust" with which it was encumbered and afterwards purchased the note secured by the deed of trust, the two estates thus acquired by him become merged and the deed of trust was extinguished, so that he could not after-

wards maintain an action against the maker of the note, there being no intervening lien or estate between the mortgage and the equity of redemption and no reason for keeping the mortgage alive.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

REVERSED.

*Geo. W. Lubke* and *Geo. W. Lubke, Jr.,* for appellant.

(1) The acceptance of the Giessler deed by Kammerer with the recital therein that the vendee assumed payment of the mortage debt was sufficient to impose personal liability upon Kammerer for this debt as principal debtor, and his signature was not necessary. McAdaras v. King, 10 Mo. App. 578; Heim v. Vogel, 69 Mo. 529; Fitzgerald v. Barker, 70 Mo. 685, 85 Mo. 13; Crone v. Stinde, 156 Mo. 262, 55 S. W. 863; 56 S. W. 907; Higgins v. Evans, 188 Mo. 627, 87 S. W. 973. And Giessler as to the mortgage debt became "entitled to the same rights and remedies against the vendee whether legal or equitable that a surety may have against his principal." Nelson v. Brown, 140 Mo. 590; 41 S. W. 960; Orrick v. Durham, 79 Mo. 174. Any impairment of these rights and remedies of Giessler against Kammerer would release Giessler. A valid extension of the mortgage debt without his consent would do so. Wayman v. Jones, 58 Mo. App. 313; Bank v. Wood, 56 Mo. App. 214; Steele v. Johnson, 96 Mo. App. 147, 69 S. W. 1065. In short, any action taken which released the principal Kammerer also released Giessler, unless the latter was a party to the action and expressly consented to remain liable. Eggeman v. Henschen, 56 Mo. 123; Bank v. Schmucker, 7 Mo. App. 171; Brown v. Croy, 74 Mo. App. 462. (2) There was a clear merger, and the court should have so declared and given judg-

ment for defendant. Plaintiff's petition was at law; and in such cases the rule is inflexible that where a greater and less estate meet in the same person and in the same right the lesser is immediately annihiliated. Atkinson v. Angert, 46 Mo. 518; Collins v. Stocking, 98 Mo. 290, 11 S. W. 750; Sater v. Hunt, 66 Mo. App. 530. And this rule applies as well to the union of a legal estate with an equitable interest; to an equity of redemption and a mortgage deed of trust. Martin v. Turnbaugh, 153 Mo. 190, 54 S. W. 515; Hudson v. Glencoe Gravel Co., 140 Mo. 120, 41 S. W. 450; Dickerson v. Bridges, 147 Mo. 244, 48 S. W. 825. (3) If the holder of a mortgage becomes the owner of the equity of redemption the mortgage debt is paid and there is no further remedy on the debt, on the principle that a party cannot sue himself. He cannot hold the land and enforce the mortgage debt against the mortgagor. Speer v. Whitfield, 10 N. J. Eq. 109-110; Biggins v. Brockman, 63 Ills. 316. Dollar Bank v. Burns, 87 Pa. St. 491; Moore v. Olive, 114 Iowa 650.

*Alexander Young* for respondent.

(1) When respondent purchased the property in question from Kammerer he did so subject to a deed of trust which appellant had executed upon it to secure the payment of two notes, and while respondent purchased the property subject to this deed of trust he did not in any manner whatever assume to pay it or make himself liable for its discharge. He was, therefore, under no legal or equitable obligation to pay it. Crone v. Stindi, 156 Mo. 268, 55 S. W. 863, 56 S. W. 907; Heime v. Vogel, 69 Mo. 529. (2) Mergers are not favored in either courts of law or equity. Bassett v. O'Brien, 149 Mo. 389, 51 S. W. 107; Hospes v. Almstedt, 83 Mo. 475. (3) A merger of an estate does not take place unless it is the intention or to the interest of the person in which the estate unites that it should take

place, and this applies to the estate of a mortgagee and a mortgagor. Rowe v. Johnson, 66 Mo. App. 63; Hospes v. Almstedt, 83 Mo. 474; Baker v. Reed, 162 Mo. 356, 62 S. W. 1001; 20 Amer. & Eng. Ency. Law, p. 1064.

STATEMENT. — "The petition of the plaintiff, Wonderly, alleged that defendant, Giessler, by his promissory note, marked Exhibit A, dated November 20, 1893, promised to pay June 6, 1896, to the order of W. J. Baird $1,800 at the Mullanphy Savings Bank for value received with interest from maturity at eight per cent per annum; that afterwards and before the maturity of this note Baird indorsed and delivered it to L. S. Holden, to whom he made it payable; that Holden and one Frank J. Hunleith then indorsed it and that thereafter and before its maturity said note was by the then owner and holder of it for value sold and delivered to plaintiff, who has ever since been and still is the owner of it; that at its maturity plaintiff caused said note to be duly presented for payment at said Mullanphy Savings Bank and payment being refused the note was duly protested for non-payment and notice of its dishonor duly given the indorsers of it; that said note with other notes was secured by a deed of trust on certain real estate in St. Charles county, Missouri, and said notes not having been paid, the trustee in said deed, at the request of the holder of said notes sold said real estate in accordance with said deed of trust and that thereby $646.66 was realized which was properly applicable as a payment on said note May 6, 1898, and was so applied thereon, but that the balance of said note, principal, interest and damages for protest remains due and unpaid, amounting to two thousand and twenty-five dollars and forty cents, for which and interest and costs plaintiff prayed judgment.

"To this petition defendant Giessler filed an amended answer and cross-bill by which he admitted the execution of the note described in and filed with said peti-

tion as Exhibit A, and also admitted that W. J. Baird, L. S. Holden and Frank J. Hunleith indorsed this note, but he denied that said note was ever sold by the owner thereof to the plaintiff and also denied generally all the other allegations in said petition contained. By way of further answer and cross-bill defendant's amended answer then alleged that defendant, on November 20, 1893, was the owner of the east one-half of southeast one-fourth of section 16, township 48 north of range five, comprising eighty-two acres of land in St. Charles county, Missouri, and that on said day defendant executed to one F. Schwartz, of the city of St. Louis, as party of the second part, the deed of trust of defendant conveying said land to Schwartz as trustee to secure to W. J. Baird the payment of two principal notes made by defendant and bearing even date with said deed, November 20, 1893, one for one thousand dollars, due June 6, 1894, and the other one for eighteen hundred dollars, due June 6, 1896, and a series of half yearly interest notes, the last one of which also matured June 6, 1896; that contemporaneously with the execution of this deed of trust, defendant also executed these notes and delivered the same to said Baird and that said deed of trust was thereupon recorded in said St. Charles county in book 57, at page 543; that thereafter on November 24, 1894, defendant sold the land described in said deed of trust to one Adolph Kammerer of the city of St. Louis for eight thousand dollars purchase money, all of which said Kammerer satisfied and discharged except twenty-eight hundred dollars which he retained to pay the two notes of defendant aggregating that sum, and the interest notes not yet matured, secured by said deed of trust, and that defendant and Mathilda, his wife, by their deed of date November 24, 1894, conveyed said land to Kammerrer in fee simple subject to the deed of trust aforesaid and the taxes for 1894 and thereafter, and that in and by said conveyance said Kammerer expressly covenanted and agreed to pay off and discharge said notes

and deed of trust at their maturity respectively; that
for further assurance this defendant and wife, on March
12, 1895, executed and delivered to said Kammerer an-
other deed being one of quitclaim, conveying said land
subject to said deed of trust, and that in and by said
second deed said Kammerer again covenanted and agreed
to pay off and discharge said notes and deed of trust at
their maturity respectively, said two deeds so made by
defendant and wife to said Kammerer having been there-
after recorded respectively in book 63, at page 430 and
book 66, at page 107, in St. Charles county, Missouri.
The answer and cross-bill next alleged that said Adolph
Kammerer in turn sold this land to plaintiff, Charles
P. Wonderly, for the stated consideration of eight thou-
sand dollars, of which consideration Wonderly also re-
tained and withheld twenty-eight hundred dollars, that
by this contract of sale the plaintiff Wonderly also as-
sumed the payment of said notes and deed of trust ag-
gregating twenty-eight hundred dollars and interest,
and that said Kammerer and wife, on March 14, 1895, by
their deed of warranty of that date, conveyed said land
to plaintiff herein, Charles P. Wonderly, expressly sub-
ject to the deed of trust securing said two principal
notes of one thousand dollars and eighteen hundred dol-
lars respectively and subject also to the interest notes
not yet matured, also secured by said deed of trust, and
that this deed of plaintiff was also duly recorded in St.
Charles county in book 63 at page 444; that after said
March 14, 1895, both said notes for one thousand dol-
lars and eighteen hundred dollars respectively were tak-
en up and satisfied by plaintiff Wonderly in accordance
with the agreement made with defendant by the plain-
tiff's grantor, Kammerer, and in compliance with plain-
tiff's obligation to his said grantor when plaintiff ob-
tained the title to said land by the deed of Kammerer
and wife for the stated consideration of eight thousand
dollars, of which plaintiff withheld the twenty-eight

hundred dollars previously alleged; that when the plaintiff so took up said two principal notes he also acquired the deed of trust by which said notes were secured, that he was then the owner in fee simple of the real estate conveyed by this deed of trust and that the title created by said deed of trust became and was merged with the legal fee simple title to said realty then held and owned by plaintiff and said notes described in said deed of trust were thereby discharged; that notwithstanding that all the interest notes as well as said two principal notes secured by said deed of trust had been fully paid and discharged as aforesaid the plaintiff, pretending to be the holder and owner of said two principal notes, did in April, 1898, induce one John F. Schneider, then acting sheriff of said St. Charles county, to advertise a sale of said land under said deed of trust and that said Schneider on May 6, 1898, did go through the form of making a sale under said deed at which sale plaintiff Wonderly became the purchaser and received from said Schneider a deed for said land; that said sale was a nullity because all the notes secured by said deed of trust had theretofore been fully discharged and the title conveyed by said deed of trust had become merged with plaintiff's fee simple title to all said land; that at said pretended trustee's sale plaintiff bid two thousand dollars for the property and pretending to be the holder of the two notes for one thousand dollars and eighteen hundred dollars respectively, he receipted to said sheriff for the pretended proceeds of said sale and that said sheriff at the instance of plaintiff credited upon the back of the note here sued on May 6, 1898, $646.66, as being part of the net proceeds of this sale. This amended answer of defendant concluded with a prayer for a decree against plaintiff, cancelling the note here sued upon and for the delivery thereof to defendant and for judgment against plaintiff for costs."

Plaintiff's reply to defendant's amended answer and cross bill was a general denial.

The issues were submitted to the court, who found for the plaintiff in the sum of $2201.18 (the balance, including interest, due on the note in suit). The learned trial judge, Hon. Daniel G. Taylor, filed a written opinion (incorporated in plaintiff's brief) from which we adopt the following succinct statement of the facts developed on the trial:

"The facts presented to the court in this action develops that on November 30, 1893, the defendant, Giessler, being then the owner of certain land in St. Charles county, made and executed his two promissory notes, one in the sum of eighteen hundred dollars, payable on June 6, 1896, and one in the sum of one thousand dollars, payable on June 6,1894, together with various interest notes, the payment of all of which notes was secured by a certain deed of trust upon said real estate.

"On the twenty fourth day of November, 1894, the defendant, Giessler, and his wife conveyed this property by deed to Adolph Kammerer subject to the deed of trust securing the two notes above mentioned and which said notes Kammerer by express covenant assumed and agreed to pay when due. On the fourteenth day of March, 1895, Kammerer and wife, conveyed this same property to Charles P. Wonderly, the plaintiff in this case, by deed in the usual form of warranty deeds, but containing the statement, that this conveyance is made subject to the deed of trust to secure these same notes.

"After this conveyance to him, Wonderly became possessed of both these principal notes by payment of the face of one of the notes and something less than the face of the other to the then holder. Across the face of the one thousand dollar note at the time of the acquisition thereof by Wonderly there had been indorsed an extension of the time of payment which did not recite any consideration and to which extension the defendant was not a party. Upon the maturity of said notes (as

extended) Wonderly presented them for payment to the defendant Giessler and upon refusal caused them to to protested.

"On the sixth day of May, 1898, Wonderly, still retaining his title to the land acquired by the deed from Kammerer, and still holding the notes, caused the property to be sold in accordance with the terms of the original deed of trust given by Giessler to secure the notes. At this sale Wonderly purchased the property after having bid an amount which when applied to the costs of the sale the extinguishment of the one thousand dollar note and in part upon the eighteen hundred dollar note, left a balance of $2,025.40 for which together with interest and costs said Wonderly now prays judgment against the defendant Giessler, who was maker of the note upon which the balance is claimed to be due.

"The defendant seeks to avoid payment of this balance, contending that when Wonderly acquired these notes he did so for the purpose of protecting his title to the real estate and upon which they were a charge and that this acquisition of the notes by him amounted to a payment and discharge of the notes, that the acquisition of the notes secured by the deed of trust by Wonderly at a time when he was the holder of the legal title from Kammerer produced a merger and satisfied the deed of trust, so that the sale of Wonderly's land, made at Wonderly's request and at which Wonderly purchased was a nullity and that defendant being thus deprived of his right to have the property subjected as a primary fund to the discharged of the debt is entitled to a discharge of his obligation on the note and that inasmuch as by operation of law when he, Giessler, conveyed the property to Kammerer, who assumed the debt, that he thenceforward occupied the position of a surety. Kammerer standing in the position of the original obligor and that when the extension upon the one thousand dollar note was made without his (Giessler's) consent, he was thereby discharged and entitled, if the sale made

by Wonderly be regarded as valid, to have the proceeds of such sale applied first to the extinguishment of the eighteen hundred dollars note and upon which suit is here brought."

The learned trial judge also found that Charles P. Wonderly did not agreed to pay the notes secured by the deed of trust, when he purchased the land of Kammerer; and further found that the evidence was insufficient to show an extension of the time for the payment of the note for one thousand dollars, and that there was no consideration for any such extension, if one was made. Kammerer testified that he understood the time of payment of both notes had been extended, when he made his purchase of the estate. There is no evidence whatever that an extension was granted after Kammerer purchased the estate. All the evidence there is in regard to an extension is the following indorsement on the bottom of the note for one thousand dollars, to wit: "Extended—due December 3, 1895." When or by whom this indorsement was written on the note does not appear.

BLAND, P. J. (after stating the facts).—1. Kammerer by assuming the payment of the deed of trust when he purchased the land of Giessler, became the principal debtor, and Giessler thereafter stood in the relation of Kammerer's surety for the payment of the note (Fitzgerald v. Barker, 70 Mo. 685; State ex rel. School District v. Riley, 85 Mo. 156; Culbertson v. Young, 156 Mo. 261, 56 S. W. 893; Sells v. Tootle, 160 Mo. 593, 61 S. W. 579; Artz v. Ins. Co., 90 Mo. App. 539) and had the same rights and remedies against Kammerer as any ordinary surety would have against his principal (Nelson v. Brown, 140 Mo. l. c. 590, 51 S. W. 960; Higgins v. Evans, 188 Mo. 627, 87 S. W. 973); and any impairment of the right, as a valid extension of the time of payment without his consent would operate to relieve him. [Steele v. Johnson, 96 Mo. App. 147; Wayman v. Jones, 58 Mo. App. 313; Commercial Bank v. Wood, 56 Mo.

App. 214.]    But there is no evidence that the time of payment was extended after the relation of principal and surety between Kammerer and Giessler attached, and if Giessler, as surety, was released, his release must be found in the fact that plaintiff acquired both the legal and equitable estate in the land before the foreclosure sale, and that there was a merger of the two estates in plaintiff which operated to extinguish the debt.

In Am. & Eng. Ency. of Law, vol. 20, p. 1064, it is said: "The rule deducible from the authorities is that where the ownership of a mortgage and the equity of redemption become vested in the same person, without any intervening right between the mortgage and the equity, the mortgage will become extinguished or not, according to his intention, expressed or implied. If an express intention appears in the instrument uniting the two interests, or can be gathered from the circumstances of the transaction, this will determine the question. In the absence of express intention it will be presumed that such person intended to keep the mortgage alive if its continuance as its subsisting charge is beneficial to him, otherwise that he intended to extinguish it. Such controlling intention, however, must be innocent and injurious to no one, for equity will not extend its aid to the accomplishment of a fraud or other unconscientious wrong."

Jones says: "It is the general rule that when the legal title becomes united with the equitable title, so that the owner has the whole title, the mortgage is merged by the unity of possession. But if the owner has an interest in keeping these titles distinct, or if there be an intervening right between the mortgage and the equity, there is no merger." [1 Jones on Mortgages, sec. 848.]

In Bassett v. O'Brien, 149 Mo. l. c. 389, 51 S. W. 107, it is said:

"Mergers are not favored either in courts of law or

of equity. [Simonton v. Gray, 34 Me. 50; James v. Morey, 2 Cowen 246.] Merger at law is defined to be 'When a greater estate and a less coincide and meet in one and the same person, in one and the same right, without any intermediate estate.'

The rule in equity is the same as at law with this modification that at law it is inflexible whereas in equity it is clear that a person may become entitled to an estate subject to a charge for his own benefit and if he choose can hold the estate and keep the charge alive. It becomes a question of intention in the person in whom the two interests are vested."

Prima facie the equitable was merged in the legal title, for there was no intervening lien or estate and there was no express agreement that the mortgage should be kept alive. The terms of the sale of the land by Kammerer to plaintiff were contained in the following written proposition (offered in evidence) from plaintiff to Kammerer and accepted by the latter:

"St. Louis, March 11, 1895.
"Mr. L. S. Holden,

"Dear Sir:—I hereby propose and agree to make the following exchange of property through your agency with Mr. Adolph Kammerer, viz:

"Trade my 320 acres land being in section 29, township 25, range 33, east in Lincoln county, Washington —subject to liens due the Northern Pacific R. R. taxes and interest on same, giving $2,000 cash for 82 acres of land adjoining the Rogers farm on the west and on the east line of the Ralls Road in St. Charles County, Mo., in section 16, township 48, range 5, east, same to be deed subject to deed of trust, accrued interest and taxes, papers to be passed at once and crop on St. Charles farm to go to me, I to give contracts of the Northern Pac. R. R. Co. for the 320 acres and said Kammerer to give me war-

rantee deed subject to the above liens same 82 acres to be as represented by Mr. L. S. Holden.

"Yours truly,
(Signed)                "CHARLES P. WONDERLY.

"P. S.—Certificate of title up to the time the $2800 loan was made to be furnished me.

"Yours truly,
"C. P. WONDERLY."

"The within contract is accepted on terms and conditions herein named.
(Signed)                "ADOLPH KAMMERER."

Plaintiff's evidence shows that he acquired the notes subsequent to his purchase from Kammerer, and that he got the notes at a slight discount. His evidence is that he purchased them because he thought it was to his interest to do so. If a mortgagee, while he holds the mortgage, acquires the estate of the mortgagor, the mortgage thereby becomes extinct. [2 Washburn on Real Property (6 Ed.), sec. 1122.] Kammerer by assuming the payment of the mortgage stood in the place of the mortgagor, and if plaintiff had been the assignee of the mortgage at the time he purchased the estate of Kammerer, the debt and mortgage would have been extinguished. But he acquired the mortgage after he acquired the equity of redemption. The general principle is that where the mortgagee purchases in the equity of redemption, the mortgage and debt are thereby extinguished. [Dickason v. Williams, 129 Mass. 182; 2 Washburn on Real Property (6 Ed.), sec. 1122, pp. 174-5; Jones on Mortgages, supra.]

In Asche v. Asche, 113 N. Y. l. c. 236, it is said:

"Merger requires the existence of two estates, a greater and lesser, and, upon merger taking place, the lesser estate is said to be extinguished and absorbed in the greater; but this cannot take place where there is an intermediate estate."

When merger takes place the lesser estate ·

is immediately annihilated. This ruling is inflexible at law and is the same. in equity as at law, with the modification, as hereinbefore stated, that it is controlled by the implied or express intention of the party in whom the interest in the estate is merged. Equity will imply the intention not to merge when a merger would operate as a fraud upon the party who has acquired the greater and lesser estate, or would have the effect to deprive him of some right or remedy that in equity and good conscience should be kept open for his benefit. An express intention that a merger should not take place could not be shown, from the very nature of the case. A secret intention that there should not be merger will not have the effect to prevent it, and the plaintiff's situation is no better than that of a mortgagee who buys the equity of redemption of the mortgagor. His purchase of the equity of redemption extinguishes the mortgage, there being no evidence tending to show any equitable reason for keeping it alive. To the contrary, the evidence shows that after plaintiff acquired the equity of redemption he purchased the note because he thought it was to his interest to do so to perfect his title. He purchased the estate subject to the mortgage. This means that the amount due on the mortgage was taken into consideration in fixing the purchase price of the estate, and that plaintiff paid Kammerer that price, less the amount due on the mortgage, hence when he acquired the mortgage he became possessed of the whole estate at a price he was willing to pay for it in the first place. Therefore, there can be no equitable ground to keep the mortgage alive, and we think, under the evidence, the equitable estate was merged in the legal one, and that the mortgage was thereby extinguished.

The judgment is therefore reversed. All concur.