# HENDERSON, by Next Friend, v. KANSAS CITY, Appellant.

### Division Two, November 17, 1903.

1. **Suit by Next Friend:** BOND. The failure of the clerk or court to require a bond of the friend appointed to prosecute a suit for a minor, does not invalidate the appointment.

2. **Instruction:** CONCEDED FACTS. Where the evidence, admitted to be true or offered without objection, conclusively shows that a city operates its waterworks in its corporate capacity for pecuniary profit, and not in its governmental capacity, the court may properly, for the purpose of its instructions, treat that fact as established.

3. **City Employee:** EVIDENCE OF EMPLOYMENT. The introduction of an ordinance relating to the control and management of the city's waterworks which provides for the employment of oilers and wipers, by the board of public works, and the testimony of the superintendent that the said board did employ them, and the proof that plaintiff was working under the chief engineer as an oiler and wiper of the engines, and that he was paid by city warrants, is evidence to sustain the allegation that plaintiff was lawfully employed by the city as an oiler and wiper, and sufficient to support an instruction submitting that issue to the jury.

4. **Instruction:** ASSUMPTION OF FACT. Where the defense is in part predicated on the obvious danger which the rapidly revolving flywheel and crank disc presented to him, and his recklessness in placing his hand close to them in oiling the machinery while they were revolving, it was not error to speak of these facts in plaintiff's instructions as established. It is not error to assume what both parties concede to be the facts.

5. **Negligence:** ASSUMPTION OF RISK: YOUTH AND INEXPERIENCE. There is an exception to the law of assumption of risks by a servant, which is, that, when by youth and inexperience he is not aware of the danger to which he will be subjected, he does not assume the risk.

6. ———: ———: CARE AND CAUTION. The law does not charge the servant with the assumption of the risk unless he reasonably supposed that he could work in the place assigned him by the use of "great care and extraordinary caution," but it requires him to use only "care and caution."

7. ———: DAMAGES: EXCESSIVE VERDICT. A boy nineteen years old, by
defendant city's negligence, was deprived of his right arm and
suffered great physical and mental pain. *Held*, that a verdict for
$8,000 was not excessive.

8. ———: GUARDS: INSTRUCTION. Plaintiff, in oiling powerful ma-
chinery, had to lean over, and slipped on the oil accumulated on
the floor, and his arm caught between a flywheel and a crank disc,
which had a scissors-like movement, and there was evidence that,
had there been guard rails about the wheel and disc, plaintiff could
have caught the railing when he slipped, or could have held to it
when he leaned over to test the bearings, or if the flywheel had
been guarded he could have thrown himself back in that direction
when he slipped and lost his balance. *Held*, that the court did not
err in submitting to the jury whether or not the fact that the
machinery was not guarded with rails as required by statute, con-
tributed to plaintiff's injury.

Appeal from Jackson Circuit Court.—*Hon. E. P. Gates,*
Judge.

AFFIRMED.

*R. J. Ingraham* for appellant.

(1) (a) It does not appear that the next friend of
plaintiff gave bond as such, or that he was relieved of
such requirement by the clerk of the court, making the
appointment. This made a jurisdictional defect, which
supported defendant's objection to the introduction of
evidence, under the petition. R. S. 1889, secs. 2001 and
2002; Spillane v. Railroad, 111 Mo. 555. (b) It is
necessary to make proof of the appointment and quali-
fication of the next friend. Porter v. Railroad, 60 Mo.
162. The proof fell short of the statutory requirement,
in that no showing was made of the giving of bond; or
that the clerk of the court, making the appointment, dis-
pensed with the requirement, as the statute authorized
him to do. (c) But over and above all this, plaintiff's
instruction No. 1 authorized a recovery without any
finding whatever as to the appointment or qualification
of the next friend. If it be necessary to plead and
prove this appointment and qualification, it is essential

that there be a submission of it to the jury and a finding that the proof supported the pleading. (2) Instruction No. 1 given for plaintiff authorized a recovery without a finding that the city was engaged in the work at Turkey Creek station, for pecuniary profit. If the city was engaged in the work in its governmental or sovereign capacity, as distinguished from its corporate capacity, there would be no liability. It would fall within the rule, as to hospital, fire department, prison, and other similar cases. Donohue v. Kansas City, 136 Mo. 657. Plaintiff deemed it necessary to make this averment in his petition. He introduced elaborate evidence to support it. Furthermore, when the city sought to show that it operated it in its governmental capacity the court refused to permit it. This was error. (3) The rule being well established that a municipal corporation can only act through its mayor and common council, it is plainly apparent that plaintiff utterly failed to sustain his case as to the employment of these men, and the scope of their authority. There was a way to make this proof, viz.: by the introduction of ordinances authorizing the appointment of an engineer or superintendent, and fixing the scope of his authority. Nothing of the kind was done. An ordinance appropriating money to pay them would have been some evidence. It is not a safe rule to fix a liability upon a city upon the mere statement of some witness "that the city did so and so." Stewart v. Clinton, 79 Mo. 603; Werth v. Springfield, 78 Mo. 107; Rumsey Mfg. Co. v. Schell City, 21 Mo. App. 175; Rowland v. Gallatin, 75 Mo. 134; Thrush v. Cameron, 21 Mo. App. 394. (4) (a) Instruction No. 2 given for plaintiff certainly merits criticism on account of its assumption of disputed facts. The facts required by this instruction to be found by the jury from the evidence were not that there was a certain condition of the flywheel, crank and floor, but that these things were apparent; and that by reason of his age and inexperience the plaintiff was not aware of the

danger. It is assumed both that there was the described condition, and that it was dangerous, and only submitted to the jury whether it was apparent and whether plaintiff' appreciated the danger; and whether he was required to work about it. All else, especially the alleged condition of the floor as slippery and dangerous, are put just as though there was no dispute or issue about such matters. Van Natta v. Railroad, 133 Mo. 13; Robertson v. Drane, 100 Mo. 273; Wilkerson v. Eilers, 114 Mo. 252; Comer v. Taylor, 82 Mo. 341. (b) And after thus singling out and making prominent this matter of age and inexperience, and assuming that there was a certain condition existing at the place, and that it was dangerous, the instruction is wholly silent as to the duty of plaintiff to use the care commensurate with the situation as he saw it, and commensurate with his age and experience. It did not require the jury to find that he used any care or caution. This practically eliminated the defense of contributory negligence and assumption of risk from the case. Lynch v. Railroad, 112 Mo. 434; Eswin v. Railroad, 96 Mo. 290. (c) In view of the undisputed evidence that plaintiff was practically an adult, doing the work and receiving the wages of a man; had been working on machinery for several months; had been, according to his own evidence, warned to be careful; had seen his fellow workman hurt in the same place; the whole situation being perfectly visible and open to view, with no latent defect; and it being his self-admitted duty to keep the oil cleaned up from the floor, there was error in the submission of his alleged lack of age to the jury. Nugent v. Railroad, 131 Mo. 241; Payne v. Railroad, 129 Mo. 405; Franenthal v. Gas Co., 67 Mo. App. 1; McIntosh v. Railroad, 58 Mo. App. 281. (5) Instruction No. 3 repeats, in most prejudicial form, the assumption that the floor "was made dangerously slippery by accumulations of oil and grease."

*William Moore, Rozzelle & Walsh* and *John G. Park* for respondent.

(1) The appointment of the next friend was properly established. The fact of appointment of next friend is proved by the petition and order introduced and admitted in evidence. The variance complained of in appellant's brief is immaterial. No bond was required by the clerk or court. Exception to the character or form of appointment of a next friend was not preserved by objection at the trial by demurrer or answer, and it is consequently waived. Taylor v. Pullen, 152 Mo. 439; Spillane v. Railroad, 111 Mo. 555; Rogers v. Marsh, 73 Mo. 70. There was no objection to the introduction in evidence of the petition and order appointing next friend, and this was tantamount to an admission of the fact of the appointment and qualification of next friend, then there was no error in omitting to require the jury to make such a finding. (2) The evidence and admissions of the defendant show that Kansas City conducted the waterworks as a private enterprise. The ordinance of Kansas City introduced in evidence without objection, except as to its materiality, and the testimony of Mr. Lawrence, showed conclusively that the city sold water to consumers exactly as did the National Water Works Company, whose plant the city had acquired. The money obtained by the sale of the water was used in paying interest on bonds, salaries of city officers connected with the department, and in paying a judgment against Kansas City in favor of the National Water Works Company. These matters established that the water works was conducted as a corporate enterprise, and not as a governmental agency. Mr. Chapman testified to this, and to his authority, and there was no objection that his testimony was not the best evidence. Ordinances of Kansas City, introduced and read in evidence, proved conclusively that the city

operated the water works in a private capacity. Bull-master v. St. Joseph, 70 Mo. App. 80; Whitfield v. Car-rollton, 50 Mo. App. 103; Donahue v. Kansas City, 136 Mo. 667; Olliver v. Worcester, 102 Mass. 489. There was no error in refusing to permit witness Lawrence to testify as to whether the ordinances were or were not always obeyed. This was immaterial. The testimony of witness Lawrence and the ordinance to the effect that the city sold water for profit was undisputed and in fact was admitted by Mr. Hadley for the defendant. This being true there was no error in omitting to make a question on this point for the jury. Carroll v. Rail-road, 88 Mo. 239; Barr v. Armstrong, 56 Mo. 577; Pratt v. Conway, 148 Mo. 299. (3)   The record contains abundant evidence of the employment of the plaintiff by the defendant.   The instructions do not assume controverted matters. Donahue v. Kansas City, 136 Mo. 699.   (4) Appellant is mistaken in saying that instruc-tion No. 1 given for plaintiff assumes that the floor was rendered dangerously slippery by accumulation of oil and grease.   This question is submitted, like all other questions of fact, by subjunctive clauses, beginning with the words, "and if the jury believe," etc.   (5) Defend-ant having given the plaintiff and the court below to understand that the case was tried upon the theory that working on engine No. 3 was dangerous, it may not now advance a new theory in this court.   Merrilees v. Rail-road, 163 Mo. 486; Whitmore v. Supreme Lodge, 100 Mo. 47; Davis v. Brown, 67 Mo. 313; Crutchfield v. Railroad, 64 Mo. 255; Pratt v. Conway, 148 Mo. 299; Bowlin v. Creel, 63 Mo. App. 234. ' (6)   The question of Henderson's age, experience and capacity were prop-erly submitted to the jury.   Soldanels v. Railroad, 23 Mo. App. 516; Dowling v. Allen, 74 Mo. 17; Dowling v. Allen, 102 Mo. 217.

GANTT, P. J.—This is an action for damages for personal injuries.   Plaintiff recovered judgment for

$8,000 and defendant appeals.   At the time of his in-
jury the plaintiff was employed by the city at its branch
waterworks, known as the Turkey-Creek Pumping Sta-
tion, as an oiler and wiper.

Plaintiff was nineteen years old when injured on Oc-
tober 5, 1897.   He had commenced work in June of
that year.   Prior to obtaining this employment he had
worked in a foundry three months and for a telephone
company four or five weeks, carrying water to the la-
borers.   He had gone to the public schools until he had
reached the eighth grade.

Before going to work for the city he had had no
experience oiling revolving machinery.   Prior to the
time of his injury his work for the city had been oiling
and wiping engines numbered 4 and 5 at this pumping
station.   On these engines the crank disc and connect-
ing rods ran sideways.

On the afternoon of October 5, 1897, Fred Erick-
son, the regular oiler and wiper on another engine num-
bered 3, was caught by the crank disc and connecting
rods and his arm cut off.   The crank disc and connect-
ing rods on this engine ran up and down.

This was a new engine and had been first operated
on August 25, 1897, and had continued in operation,
pumping water into the city mains, from that time on
until October 5th, about three-fourths of the time.

There were five engines at this station, but num-
ber 1 was temporarily out of service on the day of
plaintiff's injury.

There were three oilers in charge of these engines
up to the time that Erickson was hurt, Erickson, Helm
and Henderson.   When Erickson's arm was torn off,
Helm went to his assistance, and the testimony on be-
half of Henderson, the plaintiff, tended to prove that
Chief Engineer Chapman ordered Henderson to at-
tend to this new engine number 3.   The testimony fur-
ther tends to show that prior to Chapman's order to
look after this engine, Henderson had refused to work

on it at the request of two others.   His duty had been to oil and wipe numbers 4 and 5, which were of entirely different construction from number 3.   Within three quarters of an hour after he was ordered to take charge of number 3, his right arm was caught in the machinery and so crushed as to require amputation below the elbow.

This engine is a ponderous and complicated piece of machinery, and is called a triple expansion upright engine.

The piston rods and connecting rods work perpendicularly.   It has an immense flywheel, which revolves at a very rapid rate of speed.

Just south of this wheel, at the other side of a part of the foundation, is what is designated in the testimony as a pillow block, upon which a crank disc revolves perpendicularly between connecting rods.   This crank disc and connecting rods operate with a scissors-like action upon anything that comes between them.

The testimony tended to show that the floor, in the narrow passageway between the flywheel and the pillow block, into which it was necessary to go in order to test the bearings of the crank disc, had never been put down, and the oiler had to stand on a part of the foundation for the engine, which was not long enough to enable Henderson or other oiler to stand on it and reach the bearings without leaning over.   The evidence tended to prove that on the 5th of October, the date of the accident, oil and grease had accumulated on this foundation.

There were no guards of any kind about the flywheel, and a person going between the flywheel and the pillow block could not save himself from danger on one side by throwing himself the other way.

Because this engine No. 3 was still new, it was in danger of "running hot" and it was the duty of the oiler to test or feel the bearings every few minutes. The plaintiff testified that in obedience to the order

of Chief Engineer Chapman he undertook to oil and look after this engine No. 3 after Erickson had his arm torn off by it. He went in between the flywheel and crank disc and while he was in the act of leaning over to test the bearings he slipped on the greasy foundation and his right arm was thrown in between the scissors-like crank disc and the connecting rods, and was crushed so as to require amputation. There is no dispute as to the nature of plaintiff's injury. His right arm was crushed off. There was an irreconcilable conflict between Chapman, the chief engineer, and plaintiff in regard to Chapman's order to him to take charge of and oil this engine No. 3. Plaintiff testified that when Erickson was hurt, Chapman directed him to go in and help, and to be careful also about his own engines 4 and 5. Chapman denies this, but admitted that the engine was a new one and would "run hot" in a short time, if not properly oiled and that he told no one else to attend to it, and that Helm, the only other oiler there besides Henderson, was busy on No. 2. The city also offered evidence that plaintiff was voluntarily attempting to demonstrate to Dr. Norberg, the surgeon called to treat Erickson, how the latter was hurt, and in so doing his hand was caught and crushed.

The substantive charges of negligence in the petition are the following:

"Plaintiff states that it was the duty of the defendant to provide for the plaintiff a reasonably safe place to work; to see that machinery was so placed as to not be dangerous to him while engaged in his ordinary duties and near and about which plaintiff was required to work, was kept in reasonably safe condition and safely and securely guarded, and to refrain from sending him into places of danger or between the fixed or traversing parts of any machine while the same was in motion by the action of steam; to refrain from requiring him to clean any part of said machinery while the same was in motion, and to warn and instruct him as to the dan-

ger to be encountered in working about the engine and machinery in said pumping station.

"Plaintiff states that defendant by its chief engineer and assistant engineer, one Chapman and one Lithecum, respectively, on or about October 5, 1897, wholly disregarding its duty to him, negligently commanded the plaintiff to go to work on and about certain parts of the machinery and the gearing thereof in said pumping station and with the construction and operation of which he was totally unacquainted, and about which he had never worked before, and about which there were hidden dangers unknown to him, to-wit, the dangers of being caught and drawn into said machinery, and of slipping on the floor near it, and required him to oil and clean the same while it was in motion by the action of steam; said defendant by its engineers, further negligently commanded him to go into a position of danger and required him to work there, to-wit, between a rapidly revolving and unguarded flywheel on the north side, and a rapidly revolving and unguarded crank disc on the south side, while the same were in motion by the action of steam, on a floor rendered dangerously slippery by accumulations of oil and grease; that defendant and its engineers knew or might have known by the exercise of reasonable and ordinary care, that the position into which they commanded the plaintiff to go was very dangerous, and that about it there were hidden dangers, to-wit, the danger of being caught and drawn into said machinery, and of slipping on the floor near it, but this plaintiff on account of his youth and inexperience and unfamiliarity with said machinery and position, did not know it to be dangerous and had no means of discovering the fact.

"Plaintiff further states that the machinery about which he was commanded to work on or about October 5, 1897, as aforesaid, was negligently permitted by the defendant to be and remain in unreasonably unsafe condition in this:   That the flywheel aforesaid, and the

crank disc aforesaid, the machinery connected therewith, and the shafting and gearing of the same were not provided with guard rails or other devices to protect persons about them or working about them, from being caught and injured by them, and were so placed as to be dangerous to this plaintiff while engaged in his ordinary duties, of which facts the defendant well knew or might have known by the exercise of reasonable and ordinary care in time to have safely and securely guarded the said machinery before October 5, 1897, but of which facts this plaintiff had no knowledge or warning; that before commanding him to go into the aforesaid position of danger the defendant and its engineers and superintendents negligently failed and omitted to warn and instruct this plaintiff of the dangers to be encountered therein. That on or about October 5, 1897, the plaintiff in obedience to the command of the defendant, by its engineers as aforesaid, went between the flywheel and the crank disc, aforesaid, where the same were in motion by the action of steam, to oil and clean said crank disc and the shafting and gearing thereof, not knowing the danger therein and while in the exercise of reasonable and ordinary care for his own safety, in the performance of his said duty, he lost his balance and slipped, and on account of the careless and negligent acts and omissions of the defendant, as aforesaid, his right arm was caught by the crank disc and machinery connected therewith, and so badly crushed that it was necessarily amputated between the wrist and elbow the same day.

"Plaintiff further states that by reason of the negligence of the defendant in causing him to lose his arm, as aforesaid, he has suffered great pain of body and mind, and will so suffer in the future; that said injury is permanent and that his earning capacity has been greatly and permanently diminished thereby."

The defendant pleaded a general denial, contributory negligence and an assumption of the risks by plain-

tiff.   The verdict was for plaintiff for $12,000 and the court ordered a remittitur of $4,000, to which plaintiff consented, and judgment was entered for $8,000.   Various errors are assigned for a reversal of the judgment and they will be examined and determined in the order of defendant's assignments.

I.   The action is prosecuted by a next friend appointed on the petition of plaintiff, and the first proposition advanced by defendant is that it does not appear that the next friend gave bond as such, or that he was relieved of such requirement by the clerk making the appointment.

Plaintiff offered and read in evidence the petition for the appointment of his father as his next friend, and the order of the clerk appointing the father to commence and prosecute the suit.   No objection was made to the sufficiency of the order.   Our statute only requires a bond to be given *if the court or clerk require it,* and as the clerk made the appointment without requiring it, his failure to exact a bond in no way invalidated the appointment.   By making the appointment without requiring the bond, it is clear he deemed it unnecessary.   The giving of the bond is only necessary *when required* by the court or officer.

There is no merit in this objection, and it was wholly unnecessary to instruct the jury to find the appointment of a next friend.   This is a civil case and if defendant desired an instruction on that point he could have asked it, but it would have profited nothing, as the appointment was sufficient.

II.   The ordinances of the city introduced in evidence; the admissions of the counsel for the city, and the testimony of the chief engineer, admitted without objection, conclusively established that the city owns and operates its waterworks in its corporate capacity for pecuniary profit, and not in its governmental capacity, and when a fact is thus conceded or admitted, the

court may properly treat it as established for the purpose of the instructions. [Pratt v. Conway, 148 Mo. loc. cit. 299.] It follows that it was wholly unnecessary to require the jury to find that it operated the works for pecuniary profit as a condition precedent to plaintiff's recovery.

III. In view of the introduction of ordinance numbered 8776 relating to the control and management of the waterworks and the provision in that ordinance for the employment of oilers and wipers by the board of public works, and the uncontradicted evidence of Superintendent Longwell that the said board did hire them, and the proof that Henderson was working under Chapman, the engineer, and was paid with city warrants, it would seem that the objection to plaintiff's first instruction on the ground that there was no evidence to sustain the allegation of employment of plaintiff, was inadvertently made. The evidence was amply sufficient to show that plaintiff was lawfully employed by defendant.

The additional objection to this instruction, that "it *assumed* that the floor was dangerously slippery," etc., is without foundation. The condition of the floor was submitted to the jury. And the further objection that "the court assumed that plaintiff was ordered to work on engine No. 3" is likewise groundless.

IV. The second instruction asked and given for plaintiff is as follows:

"The court instructs the jury that even though you may believe and find from the evidence that the rapidly revolving, unguarded flywheel on the north side, and the rapidly revolving, unguarded crank disc on the south side, and the condition of the floor where plaintiff was required to work, if you find that he was so required, were apparent to a person of mature years or one accustomed to such machinery, yet, if you further find from the evidence that by reason of the

youth and inexperience of plaintiff, if you find that he was young and inexperienced, and unaccustomed to said machinery, he was not aware of the danger, the fact alone that it was apparent or visible will not defeat his right to recover in this action.''

The defendant's criticism of this instruction is that it assumes the facts upon which it is based. As to the rapidly revolving flywheel and crank disc, it is only necessary to state that defendant's own witness, Dr. Norberg, testified to those facts as well as plaintiff's witnesses, and the defense in part was predicated on the obvious danger which they presented to plaintiff and his recklessness in placing his hand in the machinery while thus revolving. These were conceded conditions by all parties to the suit, and it was not error to speak of them as established. There was no assumption that the floor was dangerous.

The purpose of this instruction was to advise the jury that, notwithstanding these conditions were such that a person of mature years and discretion would be bound to know the danger of working in such a place, and if he did, would assume the risk of so doing, but if they found that the plaintiff by reason of his youth and inexperience and by reason of his being unaccustomed to machinery of that kind, was not aware of the danger to which he was subjected by working in such surroundings, he would not be denied the right to recover merely because the physical facts were visible.

In other words, the court was instructing the jury that there was an exception to the law of assumption of risks by a servant, when by reason of his inexperience and youth he is not aware of the danger to which he will be subjected. This exception is recognized as the law of this State in Hamilton v. Rich Hill Mining Company, 108 Mo. 375, and is founded upon reason and common sense.

The law does not exact the same discretion and judgment from a green, inexperienced boy, in the hand-

ling of complicated machinery, which it would require of an experienced adult and machinist. Each may see the same objects before him, but the inexperienced boy will be ignorant of the danger, which is apparent to the adult machinist. The court did not err in submitting plaintiff's age, capacity and experience as elements by which to judge whether he should be barred from recovery because he could see the engine and the place in which he was required to work. Moreover, defendant, by its instruction No. 13, submitted to the jury whether plaintiff exercised the ordinary care and prudence which one of his years and discretion should have used under the circumstances, and thus supplemented plaintiff's instruction No. 2 on this point. [Dowling v. Allen, 102 Mo. 217.]

V. Plaintiff's third instruction is assailed because it assumes certain disputed facts to exist.

This objection is not good for the reason that nothing is assumed by it.

It states a correct proposition of law as to one issue only in the case, based upon a hypothetical state of facts of which there was competent evidence before the jury. The criticism of the use of the words that if plaintiff might reasonably have supposed he could safely work at the place by the use of "*care* and caution," then he did not assume the risk, is not sound. The contention is that the formula should have been that if he could safely work there by the use of "*great* or *extraordinary* care and caution," etc.

The law in the exact form as that employed by the court in this third instruction had been repeatedly approved by this court in similar cases. [Huhn v. Railroad, 92 Mo. 447; Settle v. Railroad, 127 Mo. 344; Hamman v. Coal Co., 156 Mo. 244; Wendler v. Furnishing Co., 165 Mo. 540.]

The defendant asked twenty-five instructions, of which the court gave thirteen. These instructions, with

those given for plaintiff and two given by the court of its own motion, fairly and fully submitted every issue in the case to the jury and it would subserve no useful purpose to copy each one in full and separately consider it.

The point that the damages allowed were excessive is not tenable. The plaintiff, a young man nineteen years old, was permanently deprived by the injury of his right arm, and suffered great physical and mental pain. After the remittitur his judgment stood for eight thousand dollars.

There is nothing so excessive in this as to shock the conscience of the court. Much larger verdicts have been approved by this and other courts.

In Chitty v. Railroad, 166 Mo. 435, a judgment for $10,000 was allowed to stand.

In Dougherty v. Railroad, 97 Mo. 647, a judgment for $12,000 was affirmed for the loss of a left arm.

In Burdict v. Railroad, 123 Mo. 221, a judgment for $7,000 was not disturbed.

In Hamilton v. Rich Hill Mining Co., 108 Mo. 364, a verdict for $8,000 for loss of a leg was approved.

In Waldhier v. Railroad, 87 Mo. 37, the plaintiff lost the lower extremities of both legs and this court affirmed his judgment for $20,000.

The amount of damages must be left largely to the reasonable discretion of the jury. Each case presents its own merits or demerits, and we see no reason for interfering with the judgment in this case on account of the amount thereof.

VI.    There was no error in refusing defendant's sixteenth instruction.

It had no reference to any issue in the case and no additional instruction was necessary on the law of assumption of risks and contributory negligence.

VII.    Defendant prayed an instruction numbered 21 to the effect that the city could not be held liable

for its failure, if any, to place guard rails around the flywheel, north of the crank disc, by which plaintiff claimed to have been injured, which the court refused.

It is clear that there were no guard rails. On the part of plaintiff there was evidence from which the jury might have found that if there had been guard rails as required by the laws of this State, sections 6433 and 6434, Revised Statutes 1899, Henderson could have caught the railing when he slipped and thus averted the injury to his arm, or if the railing had been there he could have held to it when he leaned over to test the bearings, or if the flywheel had been guarded he could have thrown himself back in that direction when he lost his balance. The court submitted to the jury whether the fact that the dangerous machinery was unguarded as required by statute contributed to plaintiff's injury. It was a question of fact and was fairly submitted, and there was no such failure of evidence as would have justified the court in peremptorily directing the jury that the failure to guard the dangerous machinery in no manner contributed to the plaintiff's misfortune. The petition counted on this neglect of statutory duty and there was evidence to sustain it. We do not think the court erred in refusing this instruction. As said in Lore v. Mfg. Co., 160 Mo. l. c. 621, the act requiring guard rails around dangerous machinery is remedial and salutary, and a failure to comply with it is negligence. Whether in this case there was a causal connection between the failure to guard the machinery and the injury to plaintiff we think was under all the evidence a question of fact for the jury.

VIII. Finally it is insisted the court should have sustained a demurrer to the evidence. The propositions on which this contention is based are, *first,* that if the city was negligent in permitting the grease to accumulate on the floor on which plaintiff was required

to work in oiling and wiping the engine, plaintiff was likewise negligent in the same particular because it was his duty *"to keep the engine from running hot and keep the grease cleaned up."* The words in italics are a quotation from plaintiff's evidence. These words taken from their natural context in plaintiff's evidence would tend to support defendant's contention, but when read in the light of his whole examination do not sustain it.

Just prior to this he had testified he had two engines to look after when he got hurt.

He was asked, "Your duties were there as an oiler and wiper?"

Ans. "Yes, sir."

Q. "What were your duties?" A. "To keep the engine from running hot and keep the grease cleaned up."

Evidently he was answering as to his duties on engines 4 and 5, which was his regular duty. Called as he was suddenly to look after engine 3 on account of the disabling of Erickson and not familiar with the engine or the place, it would be most unreasonable to charge him with the condition of the floor from the accumulation of grease or to torture his evidence as to his general duties at the two engines which were his regular charge into an admission that it was his duty to have kept the floor in the engine room of No. 3 free of grease in the few moments which elapsed from his going to engine 3 in obedience to the order of Mr. Chapman, the chief engineer, and the time of his injury. It is clear the court would not have been authorized to have instructed the jury as a matter of law that plaintiff could not recover because of his contributory negligence under all the evidence in the case.

*Second.* The next insistence is that plaintiff should have been nonsuited because he failed to make necessary proof of the appointment and qualification of the next friend. As we have already disposed of this

point, nothing further need be said than that the point is without merit.

The *third* and *fourth* propositions, to-wit, that plaintiff did not prove his employment by the city and his failure to show that the city was operating the waterworks in its corporate capacity, have already been discussed and decided adversely to defendant's contention.

*Fifth.* Defendant insists plaintiff can not recover because he assumed the risk of his employment.

When it is recalled that the plaintiff was a young man nineteen years of age; that he had no practical experience in oiling or wiping an engine of this pattern save about one and a half hours some days prior to this, and that he refused to attempt this work until the chief engineer ordered him to do so and that his injury resulted from the negligence of defendant in permitting the floor to be slippery and in not safely guarding the machinery as required by law, and that all these questions were fairly submitted to the jury, as well, also, the contributory negligence of plaintiff, it is too plain for discussion that it was a proper case for the jury and one which the trial court would not have been justified in taking from the jury by an instruction to find for defendant.

The facts bring the case well within the rule announced in the Huhn and subsequent cases and within the recognized doctrine in this State as to the exception to the general rule of assumption of risk by a servant or employee.

The case was carefully and well tried and for the reasons above noted, the judgment is affirmed. *Fox, J.,* concurs; *Burgess, J.,* absent.